Argued and submitted February 12, reversed and
remanded October 27, reconsideration denied December 10, 1982,
petition for review allowed January 25, 1983 (294 Or 460)
See 295 Or 311, 666 P2d 1332 (1983)

BYRD et al,
*Petitioners,*
*v.*
STRINGER,
*Respondent.*

(No. 81-068, CA A22578)
652 P2d 1276

Douglas Fowler, Portland, argued the cause for petitioners. On the brief was Diane Spies, Portland.

Mark J. Greenfield, Portland, argued the cause and filed the brief for respondent.

Dave Frohnmayer, Attorney General, William F. Gary, Solicitor General, and Mary J. Deits, Assistant Attorney General, Salem, filed a brief amicus curiae.

Before Gillette, Presiding Judge, Joseph, Chief Judge, and Young, Judge.

JOSEPH, C. J.

## JOSEPH, C. J.

The issue in this case is whether the Polk County Board of County Commissioners' decision to approve construction of a "farm dwelling"[1] on a 1.02 acre parcel in an area designated "Farm/Forest" under the county's acknowledged comprehensive plan and zoning ordinance violates the plan and the ordinance.[2] The Land Use Board of Appeals (LUBA) held that it did, and petitioners, owners of the property in question, appeal. They maintain that LUBA misinterpreted the county's comprehensive plan and also erred in holding that the permissibility of petitioners' proposed use depends on whether the size of the parcel satisfies Goal 3.[3]

---

[1] Petitioners had twice earlier applied to the county for permission to build a *non-farm* dwelling on the parcel. The first time, the county planning commission denied the application, but on appeal to the Board of County Commissioners it was approved. LUBA reversed the county's decision, holding that the county failed to require the applicants to deal with each element of ORS 215.213(2), which sets forth the conditions under which a single-family non-farm residence may be established in an area zoned exclusively for farm use, and failed to make findings thereon.

Nearly a year later, petitioners reapplied to the planning commission for a conditional use permit to construct a *non-farm* dwelling on the property. The request was approved, and petitioner's neighbor appealed to the Board of County Commissioners, who decided to treat petitioners' request as one for a dwelling *in conjunction with a farm use*. The Board approved the request after petitioners said they planned to raise rabbits, chickens, livestock and raspberries on the parcel. When petitioners' neighbor filed a notice of intent to appeal that decision with LUBA, the parties stipulated to a remand of the matter to the county for further proceedings, and LUBA issued an order to that effect. After further hearings on the question of petitioners' intended farming activities, the Board approved the application. The neighbor again appealed the matter to LUBA, whose decision we now review.

[2] Polk County's comprehensive plan has been acknowledged. Therefore, the county's decision must be reviewed against the comprehensive plan and ordinances rather than against the state-wide planning goals. *See* ORS 197.175(2)(d).

[3] Goal 3 provides:

"Agriculture lands shall be preserved and maintained for farm use, consistent with existing and future needs for agricultural products, forest and open space. These lands shall be inventoried and preserved by adopting exclusive farm use zones pursuant to ORS Chapter 215. *Such minimum lot sizes as are utilized for any farm use zones shall be appropriate for the continuation of the existing commercial agricultural enterprise with [sic] the area.* Conversion of rural agricultural land to urbanizable land shall be based upon consideration of the following factors: (1) environmental, energy, social and economic consequences; (2) demonstrated need consistent with LCDC goals; (3) unavailability of an alternative suitable location for the requested use; (4) compatibility

At the last hearings[4] before the Board of County Commissioners, the Byrds submitted an affidavit, a farm management plan and Mr. Byrd's testimony. As summarized by LUBA:

> "The affidavit states that Mr. Byrd is an experienced farmer who intends to engage in intensive full-time farming of his 1.02 acre parcel. The farm management plan shows that the applicants intend to produce raspberries, rabbits, eggs, garden vegetables, lambs, and beef on the property. More specifically, the applicants intend to breed 60 female and 3 male rabbits, netting about $3,000 per year. According to the record, Terrace Hill Farms of Springfield, Oregon has offered to purchase all of the rabbits the Byrds produce. The applicants also plan to grow 200 raspberry bushes on one-quarter acre, raise 14 chickens and sell excess eggs, sell surplus garden vegetables, raise a bull in a small feedlot and raise and sell several lambs. Mr. Byrd testified * * * that the rabbitry that he proposes would be housed within a 26 by 36 foot building and he would spend 'an hour or so a day' taking care of the rabbitry. He indicated that the feed for his various animals would be obtained elsewhere than from the property in question."

In granting the application, the county made findings of fact and conclusions of law, which are set out in the margin.[5]

---

of the proposed use with related agricultural land; and (5) the retention of Class I, II, III and IV soils in farm use. A governing body proposing to convert rural agricultural land to urbanizable land shall follow the procedures and requirements set forth in the Land Use Planning goal (Goal 2) for goal exceptions." (Emphasis supplied.)

[4] See note 1, *supra.*

[5]    "FINDINGS OF FACT

"* * * * *

"5. Based upon the testimony of the applicants, the Board finds that the applicants have credibly demonstrated their good-faith intentions to conduct reasonable, commercial, intensive, full-time farming on the site. * * *. The applicants have clear ideas about what kind of commercial agricultural activity could take place on the site, and are immediately prepared to conduct such activities. * * *

"6. Based upon the testimony of the applicants and the planning staff report, the Board finds that the applicants' intended use of their land will increase the aggregate agricultural enterprise of the area. The applicants' parcel has never been farmed or operated as a wood lot.

"7. Based upon the testimony of the applicants and the planning staff report, the Board finds that neither the applicants' farming activities nor their proposed dwelling will have any effect upon adjoining farms. * * *

"8. Based upon the testimony of the applicants and an agricultural extension agent, the Board finds that there are commercial markets for the products of the applicants' intended farming. * * * The agricultural extension agent testified, and the Board finds, that small, intensive farms make a significant contribution to the agriculture economy of Oregon.

"9. Based upon the testimony of the applicants, the Board finds that the applicants could reasonably expect a net profit of between $3,000 and $4,000 from their farming activities on the site. The Board finds that farming activities on the site will be the sole, full-time occupation of the applicants. * * *

"10. Based upon the testimony of the applicants, the Board finds that the applicants can only farm their land if they are allowed to build a house on it. The applicants must live on-site to protect produce, equipment, and livestock. The applicants cannot engage in intensive, commercial, agricultural activities on the site at present because of the potential for theft or vandalism. The applicants need to live on the site or they cannot afford to farm it, because of commuting and residential costs.

"Conclusions

"1. After considering the applicants' farming experience, the applicants' current activities on the site, the applicants' capabilities, and the applicants' good faith intentions, the Board concludes that the dwelling house proposed by the applicants is in conjunction with a farm use under the provisions of ORS 215.203(2), ORS 215.213, the Polk County Zoning Ordinance, and the Polk County Comprehensive Plan Agricultural Policies.

"2. After considering marketing methods available to the applicants, the potential for profit to the applicants, and the contribution of small farms to Oregon's agricultural economy, the Board concludes that the intended farm uses are commercial in nature. The applicants' intended use is clearly not a 'hobby farm' or an acreage homesite, in that the applicants must rely on income from their farming activities.

"3. After considering the history and the topography of the site, the Board concludes that the intended farming of the land will increase the aggregate agricultural enterprise of the area.

"4. The Board concludes that the applicants' farm management plan constitutes a credible, good-faith intention to conduct reasonable, intensive, commercial agricultural activity on the site; and the Board further concludes that the applicants' parcel is sufficient to accommodate their intended activities.

"5. The Board concludes that the applicants can only farm their land if they are allowed to build a house on it.

"6. After considering the existence of services to the site and the scale of the applicants' intended activities, the Board concludes that issuing a building permit to the applicants will not adversely affect agricultural operations of the area through increased demands upon public services. The Board further concludes that the applicants' intended use of their

In determining that the granting of petitioners' application was not in conformance with the comprehensive plan, LUBA looked to Polk County Ordinance No. 274, which provides in part:

> "[I]t is the intent of the Farm/Forest designation to provide an opportunity for the continuance of and creation of large and small scale *commercial* farm and forestry operations. It is also intended that the addition and location of new structures and the improvements will not pose limitations upon the existing farm and forest practices in the area or surrounding areas * * *." (Emphasis supplied.)

LUBA also cited the legislative findings in Chapter 138 (Farm/Forest zone) of the county zoning ordinance:

> "In Polk County, there are lands suitable for either agricultural or forest uses which are employed in a variety

---

property including the proposed residential dwelling, will not require the creation of new public services or facilities.

"7. After considering the current existence of residential dwellings in the area, after considering the applicants' farming experience and intentions, and after considering existing vegetational buffers, the Board concludes that allowing the applicants to build a farmhouse on their parcel will not interfere with the usual and normal practices on adjacent agricultural lands.

"8. After considering the fact that the applicants' parcel has been separated from adjoining parcels by both separate ownership and Mistletoe Road, and given the fact that the applicants have not requested a land division, the Board concludes that allowing the applicants to build a farmhouse on their parcel will not alter the stability of the overall land use pattern of the area.

"9. After considering the applicants' farm management plan, the Board concludes that it is the applicants' purpose to establish labor-intensive agricultural activity meeting the definition of a farm use as contained in ORS 215.203.

"10. Because the applicants' proposed dwelling is in conjunction with a farm use, and is not therefore a non-farm use, and because the applicants have conducted agricultural activities on the parcel in the past and intend to intensify those agricultural activities in the future, and because the applicants are not requesting a division of land, the Board concludes that the applicants' request for a building permit complies with all agricultural policies of the Polk County Comprehensive Plan.

"11. After considering the applicants' farm management plan, the Board concludes that the applicants require a residential dwelling for the purpose of establishing a labor-intensive commercial farm use as defined in ORS 215.203; the applicants intend to and are capable of establishing a commercial-scale labor-intensive farm by means of producing those agricultural products detailed in their farm management plan; the applicants' parcel will accommodate the applicants' intended agricultural activities; and the applicants possess all facilities necessary to carry out the intended commercial, labor-intensive agricultural uses."

of ways, ranging from small woodlots to large scale timber management; from small scale intensively managed *commercial* family farms to larger acreages of grazing land, to the marginal land." (Emphasis supplied.)

It concluded that the Farm/Forest designation requires that farms within that zone be "commercial." Because the term "commercial" was undefined in the county's ordinance, and because the county's comprehensive plan had been acknowledged to be in accordance with state-wide goals, LUBA reasoned:

> "We assume that when LCDC saw the word 'commercial' utilized in the county's comprehensive plan and implementing zoning ordinance it interpreted the word to be a short-cut term for the phrase 'appropriate for the continuation of the existing commercial agricultural enterprise with [sic] the area' as set forth in Statewide Goal No. 3."

In other words, LUBA read the minimum lot size requirement of Goal 3 into the county's use of the term "commercial." LUBA concluded that the proposed dwelling violates the lot size requirement, because the lot is of a size not appropriate for the continuation of the existing commercial agricultural enterprise in the area, which consists mainly of pasturage and orchard growing.

> LUBA also stated:

> "As part of this conclusion, we also determined that LCDC did not mean to imply that the applicable standard for new dwellings in an F/F zone need only be a finding the dwelling is to be used in conjunction with 'farm use.' "

This refers to LCDC's apparent rejection, in its acknowledgment order, of the contention that the county's plan and implementing ordinances violated the minimum lot size requirement of Goal 3:

> "* * * 1000 Friends objects that new farm dwellings in the EFU and F/F zones are allowed on existing lots without a showing that such lots are appropriate for the continuation of the commercial agricultural enterprise in the area. The EFU and F/F zones require that new dwellings must be *in conjunction with a farm use* (Section 136.020)." (Emphasis supplied.)

Petitioners contend that LUBA should not have looked beyond the acknowledgment order in interpreting

the acknowledged plan and zoning scheme. We agree. The very terms of LCDC's acknowledgment order quoted above render the minimum lot size requirement of Goal 3 inapplicable to this case. Moreover, the county had expressly disavowed that supposed standard. The provisions of the zoning ordinance on their face allow what the county did here:

> "The Farm/Forest (F/F) Zone is designed to provide for the full range of *agricultural* and forest *uses* for such lands * * *.

> "* * * * *

> "Further, consistent with the diverse character of this zone, *there shall be no minimum lot size,* recognizing that the actual and potential land use conditions vary from intensive to extensive cultivation and use. Polk County will review land divisions and non-natural resource uses allowed outright in this zone. Finally, the Board of County Commissioners has adopted this zone to deal with a myriad of potential uses, while recognizing the primary orientation of this zone towards *farm* and forest uses." Polk County Zoning Ord. § 138.010, Legislative Findings. (Emphasis supplied.)

■ ■ The acknowledged plan permits the county, by appropriate procedures (which no one has challenged here), to allow the use for which petitioners applied in this case. It did so after making appropriate findings of fact. It is the function of the county to find facts; it is LUBA's role only to review their sufficiency. *See* Or Laws 1979, ch 772, § 5(4)(c). Given that no one asserts that there is not substantial evidence to support the county's findings, LUBA is bound by them. LUBA committed an error of law requiring reversal. Or Laws 1979, ch 772, § 6a(8)(a).

Reversed and remanded for reconsideration.