Argued and submitted March 7, affirmed July 19, petition for rehearing
denied September 7, 1983

BYRD et al,
*Respondents on Review,*

*v.*

STRINGER,
*Petitioner on Review.*

(CA A22578, SC 29107)

666 P2d 1332

Mark J. Greenfield, Portland, argued the cause and filed the brief for petitioner on review.

Jeffrey J. Bennett, Portland, argued the cause for respondents on review. With him on the briefs were Diane Spies and Spies and Rune, P.C., Portland.

Dave Frohnmayer, Attorney General, William F. Gary, Solicitor General and Mary J. Deits, Assistant Attorney General, Salem, filed amicus curiae brief for Department of Land Conservation and Development.

Before Lent, Chief Justice, and Peterson, Campbell, Roberts, Carson and Jones, Justices.

ROBERTS, J.

## ROBERTS, J.

We granted review to consider the applicability of statewide land use planning goals, in this case Goal 3 for agricultural lands, to county land use decisions after Land Conservation and Development Commission (LCDC) acknowledgment of a county's comprehensive plan and implementing ordinances.

■  The Polk County Board of Commissioners granted respondents a building permit for a dwelling in conjunction with a farm use. The Land Use Board of Appeals (LUBA) reversed. LUBA declined to apply the standards set out in the county ordinance for new development on existing lots[1] in the farm/forest (F/F) zone. Instead, it assessed the county's decision against its interpretation of the standards of Goal 3.[2] The Court of Appeals reversed LUBA, 60 Or App 1, 652 P2d 1276 (1982), finding that because LCDC, in its acknowledgment order, expressly approved the farm use standard, Goal 3 was inapplicable to the case. We affirm the Court of Appeals and go one step further. We hold that after acknowledgment, the county plan and implementing zoning regulations control land use decisions. This is so by virtue of ORS 197.605(5), the statute which regulates our review in post-acknowledgment cases. Our analysis applies to review of any post-acknowledgment land use decision, whether or not LCDC expressly addresses a particular ordinance in its acknowledgment order. The county's decision in this case complied with its acknowledged plan and implementing ordinances.

---

[1] Existing lots are those parcels in existence at the time of the creation of a zone by ordinance. This may be contrasted with lots created by land division after a zone is established.

[2] The Land Conservation and Development Commission (LCDC) has promulgated statewide land use planning goals pursuant to ORS 197.040(1)(c). These goals reflect the state agricultural land use policies set forth in ORS 215.243.

Goal 3 provides in relevant part:

"To preserve and maintain agricultural lands.

"Agriculture lands shall be preserved and maintained for farm use, consistent with existing and future needs for agricultural products, forest and open space. These lands shall be inventoried and preserved by adopting exclusive farm use zones pursuant to ORS Chapter 215. Such minimum lot sizes as are utilized for any farm use zones shall be appropriate for the continuation of the existing commercial agricultural enterprise within the area. * * *"

## FACTS

The Byrds, respondents in this court, applied for a permit to build a dwelling on their 1.02 acre parcel in Polk County's F/F zone. In order to erect a dwelling on agricultural land in that zone Polk County's acknowledged ordinances require an applicant to demonstrate that the dwelling either (1) is permitted outright pursuant to county ordinance sections 138.030(a) and 136.020, that is, is a dwelling in conjunction with a farm use, or, (2) meets the criteria for a non-farm dwelling set forth in ordinance section 138.040(1), incorporating ORS 215.213(3).[3] Simply stated an applicant choosing the first route must show that the land to be built upon is a farm; otherwise he or she must prove that the land is unsuitable for farming, a non-farm parcel.

On October 5, 1981, the county granted the Byrds' request for a dwelling permitted outright because it concluded that the Byrds could put their parcel to a farm use as that term is defined in ordinance section 110.223, set forth *infra.* The county determined that (1) the property could be farmed profitably as an intensive commercial farm for the raising of rabbits and raspberries, (2) the Byrds' use of the land would increase the aggregate agricultural enterprise in the area, and (3) the parcel was sufficiently large to accommodate the intended farming activities.

---

[3] ORS 215.213(3) provides:

"(3)    Single-family residential dwellings, not provided in conjunction with farm use, may be established, subject to approval of the governing body or its designate in any area zoned for exclusive farm use upon a finding that each such proposed dwelling:

"(a) Is compatible with farm uses described in ORS 215.203(2) and is consistent with the intent and purposes set forth in ORS 215.243;

"(b) Does not interfere seriously with accepted farming practices, as defined in ORS 215.203(2)(c), on adjacent lands devoted to farm use;

"(c) Does not materially alter the stability of the overall land use pattern of the area;

"(d) Is situated upon generally unsuitable land for the production of farm crops and livestock, considering the terrain, adverse soil or land conditions, drainage and flooding, vegetation, location and size of the tract; and

"(e) Complies with such other conditions as the governing body or its designate considers necessary."

LUBA reversed the county, apparently finding it had "[i]mproperly construed the applicable law." ORS Section 5(4)(a)(D), ch 772, Or Laws 1979, as amended by ch 748, Or Laws 1981. LUBA determined that the profitability criterion was an inadequate definition of commercial farm, because it had rejected such a standard in *Sane Orderly Development v. Douglas County Bd of Comm'rs,* 2 Or LUBA 196 (1981). Even though "farm use" is the only standard set forth in the acknowledged ordinance for construction of dwellings in the F/F zone, LUBA decided that "LCDC did not mean to imply [in its acknowledgment order] that the applicable standard for new dwellings in an F/F zone need only be a finding the dwelling is to be used in conjunction with 'farm use.' " LUBA, therefore, relied exclusively on Goal 3 and interpreted a commercial farm to be, at a minimum, one which is of comparable size to others in the area. It ruled that dwellings in the F/F zone could be erected only on parcels sufficiently large to ensure "continuation of the existing commercial agricultural enterprise within the area," language drawn from Goal 3. Unless that prerequisite is met, profitability, according to LUBA, is irrelevant. LUBA concluded that because the Byrds' parcel was smaller than surrounding commercial agricultural tracts it was presumptively unsuitable for a commercial agricultural enterprise.

The Court of Appeals reversed LUBA. It reasoned that LCDC had expressly approved in its acknowledgment order the county's "farm use" standard for new building on existing lots in the F/F zone. The court noted that the county's standards for building on existing lots were challenged during the acknowledgment process for noncompliance with Goal 3. The attack was rejected by LCDC in its acknowledgment order:

> "Fourth, 1000 Friends object that new farm dwellings in the [exclusive farm use] EFU and F/F zones are allowed on existing lots without a showing that such lots are appropriate for the continuation of commercial agricultural enterprises in the area. The EFU and F/F Zones require that new dwellings must be in conjunction with a farm use (Section 136.020). This issue was not previously objected to by 1000 Friends."

The court was further persuaded that Goal 3 standards do not apply because the county had declined to set a

minimum lot size for the F/F zone. Ordinance section 138.010 set forth *infra.*

The court relied exclusively on the acknowledged plan and ordinances, sections 138.030(a) and 136.020, and determined that a commercial farm is one which meets the county's definition of farm use:

> "110.223. FARM USE. 'Farm Use' means the current employment of land including that portion of such lands under buildings supporting accepted farming practices for the [primary] purpose of obtaining a profit in money by raising, harvesting and selling crops or by the feeding, breeding, management and sale of, or the product of, livestock, poultry, furbearing animals or honeybees or for dairying and the sale of dairy products or any other agricultural or horticultural use or animal husbandry or any combination thereof. 'Farm use' includes the preparation and storage of the products raised on such land for man's use and animal use and disposal by marketing or otherwise. * * *."[4]

Profitability, according to the Court of Appeals, is the only consideration in the county's decision. Because the Byrds had adequately demonstrated that they could farm their parcel intensively at a profit, the county's decision was affirmed.

We review pursuant to ORS Section 6a(8)(a), ch 772, Or Laws 1979, as amended by ch 748, Or Laws 1981, to examine whether LUBA's order was unlawful in substance.

## THE ACKNOWLEDGMENT PROCESS

■■ LCDC is charged with authority to review county comprehensive plans and implementing ordinances for compliance with the statewide planning goals. ORS 197.040(2)(d). The acknowledgment order is LCDC's recognition that the plan and regulations conform with the goals. ORS 197.015(1). Prior to acknowledgment, land use decisions are made "in compliance with the goals." ORS 197.175(2)(c). After acknowledgment the county must "make land use decisions in compliance with the acknowledged plan and land use regulations." ORS 197.175(2)(d). In the normal post-acknowledgment case, a reviewing court or agency would have no occasion

---

[4] ORS 215.203(2)(a), upon which this ordinance is based, was amended in 1979 to add the bracketed word. Ch 480 § 1, Or Laws 1979. We incorporate the bracketed language in our analysis so as to interpret the ordinance consistent with the statute.

to look beyond the plan or ordinance to assure itself of goals compliance. The statewide goals are necessarily met if the county's decision comports with the acknowledged plan and implementing ordinances.

## THE ACKNOWLEDGED PLAN AND ORDINANCES

On March 25, 1981, LCDC acknowledged Polk County's comprehensive plan and implementing ordinances to be in compliance with statewide planning goals as provided by ORS 197.251. Included in this acknowledgment was the county's designation of 33,000 acres as a Farm/Forest zone.

The Farm/Forest Comprehensive Plan Designation provides that "[i]t is the intent of the Farm/Forest designation to provide an opportunity for the continuation of and creation of large and small-scale commercial farm and forestry operations."

Polk County's legislative findings, at section 138.010, regarding the F/F zone include the following:

> "In Polk County, there are lands suitable for either agricultural or forest uses which are employed in a variety of ways, ranging from small woodlots to large-scale timber management; from small-scale intensively managed commercial family farms to larger acreages of grazing land, to the marginal lands.
>
> "* * * * *
>
> "Further, consistent with the diverse character of this zone, there shall be no minimum lot size, recognizing that the actual and potential land use conditions vary from intensive to extensive cultivation and use. Polk County will review land divisions and non-natural resource uses to assure compatability with the preferred natural resource uses allowed outright in this zone. Finally, the Board of County Commissioners has adopted this zone to deal with a myriad of potential uses, while recognizing the primary orientation of this zone towards farm and forest uses."

■ Permitted uses in the F/F zone include "any use permitted outright in the exclusive farm use zone * * *." Section 138.030(a). Uses permitted in the EFU zone are set forth in section 136.020. They include " farm uses" (defined in section 110.223 and set forth above) and "single family dwellings." We note that ORS 215.213(1)(f) allows those dwellings in an

exclusive farm use zone "customarily provided in conjunction with farm use." Although the ordinance does not appear to include this phrase, we interpret the ordinance consistent with state law. This was the interpretation imposed by the County Board of Commissioners below and by LCDC in its acknowledgment order.

LUBA ruled that unless Goal 3's lot size standard as interpreted in LCDC policy statements was incorporated into the acknowledged ordinance, and applied and met in the instant case, the county's decision must fail. LUBA's decision is incorrect for two reasons.

First, LCDC policy pursuant to Goal 3 specifically exempts from the lot size requirements intensive commercial farm operations.[5] Second, and fundamental to this decision, the fact that a county's plan and ordinances have been acknowledged is sufficient to restrict review of the county's decision to one for compliance with the plan and ordinances. LUBA disregarded the acknowledged plan and ordinances, choosing instead to apply Goal 3 standards as it would in a pre-acknowledgment review. This was error.[6] We hold that once

---

[5] The intent of Goal 3 is the preservation of agricultural lands for "farm use." Toward this end, Goal 3 requires the maintenance, in farm use zones, of lot sizes which are "appropriate for the continuation of the existing commercial agricultural enterprise within the area."

LCDC policy states that a farm parcel is one that is large enough to continue the existing agriculture enterprise but recognizes as well that "[i]f the lot does not meet the standard, the new dwelling will be considered a nonfarm residence, *unless it is found that the smaller lot is appropriate for an intensive commercial farm operation (i.e., nursery, berries, greenhouse, etc.)*" (Emphasis added.) Common Questions about Goal 3 - Agricultural Lands #9.

[6] LUBA's interpretation of the ordinance would have the effect of setting more stringent standards for development on existing lots than for divisions of land in the F/F zone, a result that does not appear to be contemplated by the county. County ordinances permit land divisions:

"for the purpose of establishing a labor intensive commercial farm use (as defined in ORS 215.203) or a labor intensive commercial forest use. An applicant for a land division under this subsection must show: (i) the ability to establish a specific type of commercial scale labor intensive use using *accepted farming practices as defined in ORS 215.203(2)(c)*; (ii) that the land to be divided is suited to the intended commercial scale labor intensive use; (iii) that all facilities necessary to carry out the intended commercial labor intensive use are available to the property or will be made available to the property."

This criterion for land division was expressly approved by LCDC in the acknowledgment order. During the acknowledgment process 1000 Friends of Oregon objected to this provision. LCDC responded: "*These types of divisions as allowed in Polk*

acknowledgment has been achieved, land use decisions must be measured not against the goals but against the acknowledged plan and implementing ordinances.

Petitioner challenges the sufficiency of the evidence to support the county's decision but only as the evidence may apply to standards other than the farm use criteria of section 110.223. Because it is not challenged we do not review the sufficiency of the evidence to support the farm use standard.

The decision of the Court of Appeals is affirmed. The Court of Appeals remanded. We cannot determine why nor could the parties at oral argument. This affirmance does not encompass the remand.

---

County's EFU and F/F zones do not violate Goal 3 because: * * * Labor intensive commercial farms are allowed by Commission policy."