Argued and submitted March 25, 1983, affirmed October 24, 1984

LAMB,
*Respondent,*

*v.*

LANE COUNTY et al,
*Petitioners.*

(LUBA No. 82-040; CA A26184)

689 P2d 1049

Richard E. Miller, Eugene, argued the cause for petitioners. With him on the brief were William A. Van Vactor, County Counsel, and Hershner, Hunter, Miller, Moulton & Andrews, Eugene.

Thomas G. P. Guilbert, Portland, argued the cause and filed the brief for respondent.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

The sole issue presented is whether respondent (Lamb) has standing to maintain an appeal to the Lane County Board of Commissioners (Board) from a quasi-judicial land use decision made by a county hearings officer. The Board, relying on Lane County ordinances, concluded that Lamb did not have standing. LUBA concluded that the Board applied the wrong test to determine standing and reversed. We affirm LUBA's order.

Petitioner Pickett proposes to develop 300 acres of forest land into 20 acre lots with access roads for residential development and forest management uses. A hearing on the proposal before a county hearings officer was held on December 18, 1981.[1] Lamb appeared at that hearing, offering testimony and documentary evidence[2] in opposition to the proposal. The hearings officer specifically found that Lamb had standing; he also approved Pickett's proposal. Lamb appealed to the Board, which held a hearing on March 3, 1982. By agreement of the parties, the only issue argued at that hearing was Lamb's standing to maintain the appeal. The Board dismissed Lamb's appeal, finding that he did not have standing under a provision of the county code then controlling land use appeals, which provided:

"An appeal may be made to [the Board] by the applicant or *any person who is adversely affected or aggrieved* by the decision * * *." Lane County Code 14.010(1). (Emphasis supplied.)

ORS 215.422(1)(a) provides, in part:

"A party *aggrieved by the actions of a hearings officer* may appeal the action to the planning commission or county governing body, or both, however the governing body prescribes. * * *"[3] (Emphasis supplied.)

---

[1] The Lane County Land Development Review Commission initially rejected Pickett's proposal; Pickett appealed from that decision to the hearings officer, who approved it.

[2] None of the evidence submitted by Lamb has been controverted by Pickett or the county at any stage of these proceedings.

[3] ORS 215.422(1)(a) was amended in particulars not relevant here by Oregon Laws 1983, chapter 827, section 21.

ORS 215.422(1)(b) allows a county to treat the hearing officer's decision as final. Lane County ordinances permit discretionary review by the Board, but also "permit"

■        That statute grants a right of review to anyone "aggrieved" by the action of a hearings officer. Because the Board may not define "aggrieved" to mean something more restrictive than what is meant by ORS 215.422, *Overton v. Benton County,* 61 Or App 667, 672, 658 P2d 574 (1983), it appears that the only question is whether Lamb is a party "aggrieved" by the action of the hearings officer. If he is, then the Board must recognize Lamb's right to appeal as a person "aggrieved" under ORS 215.422. *Overton v. Benton County, supra.*

        In *Jefferson Landfill Comm. v. Marion Co.,* 297 Or 280, 686 P2d 310 (1984), the Supreme Court explained the test it announced in *Benton County v. Friends of Benton County,* 294 Or 79, 653 P2d 1249 (1982) for determining when a person is "aggrieved" within the meaning of section 4(3) of Oregon Laws, 1979, chapter 772, *amended by* Or Laws 1981, ch 748, § 35.[4] As relevant here, section 4(3) allows a person whose interests are "adversely affected or who was aggrieved" by a local government's quasi-judicial land use decision to petition LUBA for review. In that context, a person is aggrieved if:

        "1)   The person's interest in the decision was recognized by the local land use decision-making body;

        "2)   The person asserted a position on the merits; and

        "3)   The local land use decision-making body reached a decision contrary to the position asserted by the person." 297 Or at 284.

*See also Warren v. Lane County,* 297 Or 290, 298-301, 686 P2d 316 (1984).

■        Although the issue here is not whether Lamb has standing to appeal to LUBA under section 4(3), but is whether Lamb has standing to appeal to the Board under ORS 215.422, we conclude that the test for determining when a person is aggrieved under ORS 215.422 is the same as the test explained in *Jefferson Landfill* under section 4(3). Both ORS 215.422

LUBA review without an appeal to the Board. Because the county may not do that, *Lyke v. Lane County,* 70 Or App 82, 688 P2d 411 (1984), its argument here that Lamb could have sought LUBA review of the hearing officer's decision, thereby mooting the Board's decision on standing, fails.

    [4] Section 4(3) has been repealed (Or Laws 1983, ch 827, § 59). *See Jefferson Landfill Comm. v. Marion Co., supra,* 297 Or at 282 n 1.

and section 4(3) address the right to appeal quasi-judicial land use decisions. ORS 215.422 was amended, and section 4(3) was duplicated in substance at ORS 197.830(3) after the first judicial gloss was placed on the term "aggrieved" by *Benton County v. Friends of Benton County, supra,* and the legislature did not define that term in either statute.[5] We do not think the legislature intended the term "aggrieved" to have a meaning in ORS 215.422 different from that in section 4(3). To conclude that different meanings were intended would result in one of two anomalies: either persons without standing before a local land use decision-making body would have standing to appeal that body's decisions to LUBA, or the local body might preclude LUBA review.

The county hearings officer in this case reached a land use decision contrary to the position on the merits Lamb asserted at the hearing. The remaining question under *Jefferson Landfill* is whether Lamb's interest in the decision was recognized by the "local decision-maker." In that case, we are told:

> "* * * Local decision-makers, by ordinance or otherwise, may determine who will be admitted or excluded as an interested person or limited to the status of a disinterested witness * * *. If the decision-makers have not made such a determination, by ordinance or otherwise, it will be assumed that when a person appears before the local body and asserts a position on the merits, the person has a recognized interest in the outcome." 297 Or at 284-85.

The court described that process as the local government's "gate-keeping function."[6] The court went on to say that

> "* * * absent any limitation of who may appear as an interested person, the mere allowance of a person to appear and assert a position on the merits is sufficient to make a person an 'interested person,' * * *." 297 Or at 285.

█ In this case, by the time the Board considered the relevance of Lamb's interest to Pickett's proposal, Lamb was already through the gate, at least part way; he had been recognized by the hearings officer as an interested party, he

---

[5] *See* Or Laws 1983, ch 827, § 28(c); Or Laws 1983, ch 827, § 31(3) (codified at ORS 197.830); and Or Laws 1983, ch 827, § 21 (codified at ORS 215.422).

[6] We note that Lamb appeared before at least three different local decision-making bodies.

had taken a position on the merits, and the hearings officer had reached a decision contrary to Lamb's position. However, that would not preclude the Board from deciding that Lamb did not have standing, assuming that it applied the proper criteria. Some of the language in *Benton County v. Friends of Benton County, supra,* 294 Or at 90-91, suggests that as long as the local body applies the correct test, it may reach a conclusion different from that which a court might reach.[7] It is clear that the Board did not apply the correct test, and the question remains whether the proper disposition here would be to remand the case to the Board to reconsider Lamb's standing, applying the correct test.

As we understand *Benton County v. Friends of Benton County, supra,* and *Jefferson Landfill,* read together, the undisputed facts on which Lamb relies for standing are sufficient as a matter of law to qualify him as a person aggrieved within the meaning of ORS 215.422. Accordingly, the Board may not decline to review his appeal for want of standing. Therefore, the proper disposition is to affirm LUBA's order reversing the Board's order that Lamb does not have standing.

Affirmed.

---

[7] Although the discussion in *Benton County* related to a court's review of LUBA's decision on standing, the same analysis appears to be applicable to LUBA's review of a local body's decision. For example, if the factual predicates on which Lamb relies to show standing were disputed, the local body's findings of fact, if supported by substantial evidence, must be accepted by LUBA. If the local body applies the proper test to those findings and reaches a rational conclusion that a person lacks standing, then LUBA would not be justified in reversing that decision even though it would reach a different conclusion, unless it finds that the local body improperly construed the applicable law. *See* ORS 197.835.