Argued and submitted February 1, affirmed February 27, reconsideration denied April 19, petition for review denied July 9, 1985 (299 Or 443)

# LUDWICK et al,
*Respondents,*

*v.*

# YAMHILL COUNTY,
*Petitioner - Cross-Respondent,\**
# EAGLE POINT HOMEOWNERS ASSOCIATION,
*Intervenor - Cross-Petitioner.\*\**

(83-117, 83-118, 83-119; CA A32827)

696 P2d 536

---

\* Submitted on remand December 4, 1984.

\*\* Court of Appeals opinion issued November 21 withdrawn and appeal reinstated.

Daryl S. Garrettson, Yamhill County Counsel, McMinnville, argued the cause for petitioner - cross-respondent. With him on the brief was John M. Gray, Jr., Yamhill County Assistant County Counsel, McMinnville.

Scott O. Pratt, Portland, argued the cause and filed the brief for respondents.

John W. Hitchcock, McMinnville, argued the cause and filed the brief for intervenor - cross-petitioner.

Before Richardson, Presiding Judge, and Joseph, Chief Judge, and Warden, Judge.

JOSEPH, C. J.

## JOSEPH, C. J.

In November, 1983, Yamhill County approved the application of Eagle Point Homeowners Association to rezone an area known as Eagle Point Ranch from "commercial forestry" to "very low density residential." The rezoning required an amendment to the county's acknowledged comprehensive plan and zoning ordinance. The county simultaneously granted the association's application for conceptual approval of a planned unit development (PUD) on the site. Because the area is comprised of forest land that is subject to Goal 4, the county premised its decisions on the alternative bases that the amendments and the PUD were consistent with the goal or, if they were not, an exception to the goal was permissible under ORS 197.732.

The respondents in this appeal,[1] Ludwick and Burcham, appealed the county's decisions to the Land Use Board of Appeals. The county and the association—which appeared as an intervenor—moved to dismiss the LUBA appeal on the ground that it was untimely under ORS 197.830(7). LUBA denied the motion and, on the merits, reversed the decisions in part and remanded them in part. The county and the association (petitioners) now seek review by this court.[2]

■    Petitioners first contend that LUBA did not have jurisdiction over respondents' appeal from the county's decisions, because respondents filed their notice of intent to

---

[1] *Respondents in this appeal were petitioners before LUBA. We refer to the parties by their designations in this court.*

[2] The county filed a petition for judicial review, but did not file a notice of intent to appeal. ORS 197.850(3); ORAP 5.65. The association subsequently filed a cross-petition. ORAP 5.77. We allowed respondents' motion to dismiss the county's appeal because of its failure to file a notice of intent to appeal. We later dismissed the association's cross-petition, reasoning that *no* party had filed the notice necessary to give us jurisdiction to review LUBA's order. *Ludwick v. Yamhill County,* 71 Or App 34, 691 P2d 906 (1984). The Supreme Court vacated our dismissal of the county's appeal and remanded the case to us with instructions:

"'To reinstate the appeal unless the court determines that the failure to file a document entitled 'Notice of Intent to Appeal' was prejudicial and proceeding upon the petition for review would be unfair to respondents."

*Ludwick v. Yamhill County,* 298 Or 302, 306, 691 P2d 906 (1984). We conclude that no prejudice or unfairness to respondents will result from our reaching the merits, and we have reinstated judicial review as to both petitioners. Although petitioners have appeared separately, the association's brief simply "adopts and incorporates" the county's.

appeal to LUBA more than 21 days after the county's decisions became final and the notice was therefore untimely under ORS 197.830(7). Respondents answer that the county did not send them a timely notice of its decisions, ORS 197.615(2), and that the time for taking an appeal to LUBA was therefore tolled until they had learned of the decisions. Petitioners reply that, although respondents completed the forms that the county provided to enable them to signify a desire to participate in the county hearing and to receive notice of the decision and although both respondents checked the box on the forms indicating "opposition to the application," they failed to check the box indicating that they wished to receive notice. (A facsimile of respondent Burcham's completed form, which is materially identical to respondent Ludwick's, is reproduced in the margin.)[3] Consequently, petitioners argue, respondents did not request notice and were not entitled to it. *See* ORS 197.615(2)(a)(B). Petitioners also

---

[3]

"PUBLIC COMMENT/NOTICE
"REGISTRATION CARD

"Yamhill County Department of Planning
"And Development

"Notice to All Persons Present:

"All persons present at this hearing who wish, or may wish, to be a party before this body, or in any further action on a particular docket item, must sign a public participation sheet, wherein they set forth their name, address and the docket item in which they wish to be designated a party. Failure to do so may result in the loss of any right they may have to appeal the decision made on this docket item.

"[ ] APPEAL RIGHT/NOTICE OF DECISION

"I wish to be officially recognized as an interested party in this hearing, thus establishing my right to appeal the decision made. I request to be personally notified of the decision.

"COMMENTS

"[ ] Support of the application

"[X] Opposition to the application

"[ ] Written Comments (Use back of card for additional comments)

"DOCKET PA-121-83/2-230-83 DATE     4/7/83

"NAME                    Brian L. Burcham
                        (please Print)

"ADDRESS            Rt 3 Box 247

                        McMinnville        97128                    "

argue that, even if respondents were entitled to notice, the jurisdictional time requirement of ORS 197.830(7) cannot be tolled.

LUBA agreed with respondents and denied the motion to dismiss. It first said:

"Each completed form indicates opposition to the proposals challenged in this case. Despite some ambiguity in the forms, we also read them to request notification of any decision reached by the county concerning the proposals. In our view, the filing of these forms was sufficient to bring petitioners Ludwick and Burcham within the coverage of ORS 197.615(2)."

We agree. We also note that the words "APPEAL RIGHT/ NOTICE OF DECISION" and the box preceding them on the county's form are located *between* two blocks of printed material, both of which refer to participation rights, appeal rights and loss of appeal rights and only the second of which refers to notice. LUBA's description of the forms as "ambiguous" is charitable; they are inscrutable. The county provided forms that a person of average or better intelligence could reasonably understand as giving a right to notice if *any* box was checked. Respondents were entitled to notice under ORS 197.615(2)(a).

The more difficult question is whether the failure of the county to give the required notice tolled the time for appealing.[4] Petitioners rely by analogy on *Farwest Landscaping, Inc. v. Modern Merchandising,* 287 Or 653, 601 P2d 1237 (1979), and *Junction City Water Control v. Elliott,* 65 Or App 548, 672 P2d 59 (1983), which hold, at least implicitly, that a county clerk's failure to notify a party of the entry of a judgment pursuant to ORCP 70B does not extend the time for filing an appeal under ORS ch 19. LUBA concluded that

---

[4] We found it unnecessary to reach a similar issue in *McCoy v. Marion County,* 69 Or App 522, 525-26, n 4, 686 P2d 1059, *rev den* 298 Or 334 (1984).

We held in *Columbia River Television v. Multnomah Co.,* 70 Or App 448, 689 P2d 1014 (1984), *rev allowed* 298 Or 470 (1985), that the time for filing a notice of intent to appeal from the county's order was not tolled because the clerk of the governing body misadvised the petitioner's attorney that the order, which was available for public inspection at all relevant times, had been filed three days later than it in fact was. We expressly confined our holding in *Columbia River Television* to its facts. There was no issue in that case of a failure by the county to give the petitioner the notice required by ORS 197.615(2).

*Bryant v. Clackamas County,* 56 Or App 442, 643 P2d 649 (1982), is the more apposite authority. The issue there was whether a county ordinance that required appeals from a hearings officer to the governing body to be brought within 10 days after the hearings officer's oral decision was consistent with ORS 215.416(7).[5] That statute provided:

"Written notice of the approval or denial shall be given to all parties to the proceeding."

We concluded in *Bryant* that it

"would make that requirement a nullity if a county were allowed to provide that the time for appeal may expire before the parties have been given that required notice. The time for taking an appeal cannot begin to run until written notice is given." 56 Or App at 448.

■ ■   LUBA analogized the situation here to *Bryant.* It reasoned that ORS 197.615(2) requires notice, as did the statute we construed in *Bryant,* and that "notice containing the required information [under ORS 197.615(2)] is a prerequisite to the running of the 21 day period for appeals." The difficulty with LUBA's reasoning is that the issue in *Bryant* was whether a *local ordinance* made a nullity of a *state statute;* here, two statutes are involved, and the present question differs in degree rather than in kind from the question in *Farwest Landscaping, Inc. v. Modern Merchandising, supra,* and *Junction City Water Control v. Elliott, supra.* However, that difference in degree is significant. As LUBA observed in its order denying the motion to dismiss, the notice required by ORS 197.615(2), unlike the notice of entry of judgment that the clerk is required to send pursuant to ORCP 70B, must explain to the recipients "the requirements for appealing the action of the local government under ORS 197.830 to 197.845." ORS 197.615(2)(b)(D). That language was added to ORS 197.615 by the same 1983 act through which ORS 197.830(7) was adopted. Or Laws 1983, ch 827, §§ 9 and 31. Unlike ORCP 70B, ORS 197.615(2) does not simply require notice that an appealable event has occurred. It also requires an explanation of the procedure for appealing. We agree with LUBA that the legislature intended to make the running of

---

[5] ORS 215.416 was amended by Oregon Laws 1983, chapter 827, section 20. The amendment renumbered subsection (7) to subsection (8), but did not change its language.

the time for filing a notice of intent to appeal under ORS 197.830(7) contingent on the giving of notice to an appealing party who is entitled to notice under ORS 197.615(2). LUBA did not err in denying the county's and the association's motion to dismiss. We turn to the merits.

LUBA concluded that (1) the plan and ordinance amendments and the approval of the PUD on forest land violate Goal 4; (2) an exception to the goal could not be taken pursuant to ORS 197.732(1)(a) (physical development) or ORS 197.732(1)(c) (need and related factors); and (3) the county's findings and stated reasons do not satisfactorily explain why an exception pursuant to ORS 197.732(1)(b) (irrevocable commitment) was justified, and a remand to the county on that issue was therefore necessary. *See* n 6, *infra.*

Petitioners' first assignment of error pertains to the Goal 4 compliance issue. They rely on the language in the goal that "[e]xisting forest land uses shall be protected unless proposed changes are in conformance with the comprehensive plan." Petitioners contend that the county's decisions complied with its acknowledged comprehensive plan and that LUBA erred by testing the decisions against the goal's policies rather than the plan's, when the goal itself makes conformance with the plan the applicable test. Petitioners also rely on *Byrd v. Stringer,* 295 Or 311, 666 P2d 1332 (1983), which held generally that, after acknowledgement, a local government's land use decisions are tested for compliance with its comprehensive plan rather than the goals.

LUBA rejected those arguments. It stated:

> "Changes in existing forest land uses can be authorized by a variety of governmental actions. Where those actions do not involve changes in the acknowledged plan itself, such as where a conditional use permit or a land division is approved, we agree the plan serves as the controlling document. * * * However, where the change in use cannot be carried out without a change in the acknowledged plan, as here, neither the cited language in Goal 4 nor the Supreme Court's holding in *Byrd [v. Stringer], supra,* provide guidance. Instead such post-acknowledgement plan amendment cases fall within the provisions of ORS 197.835(4)."

ORS 197.835(4) provides, as relevant:

> "[LUBA] shall reverse or remand a decision to adopt an amendment to an acknowledged comprehensive plan or land

use regulation or a new land use regulation if the amendment or new regulation does not comply with the goals."

*See also* ORS 197.610 to 197.650.

■ ■ Petitioners' argument is circular. The county's actions here included an amendment to its comprehensive plan. The fact that a comprehensive plan has been acknowledged obviously does not mean that amendments to the plan will also comply with the goals. *Compare Perkins v. City of Rajneeshpuram,* 68 Or App 726, 686 P2d 369, *rev allowed* 298 Or 238 (1984). Petitioners nevertheless understand the "conformance with the comprehensive plan" language of Goal 4 to mean that a comprehensive plan amendment that affects forest land or uses must only be consistent with the unamended plan and need not comply with Goal 4. We do not agree with petitioners that the language has any application to comprehensive plan or land use regulation amendments that ORS 197.835 and the post-acknowledgment statutes make reviewable for goal compliance. *See 1000 Friends v. LCDC,* 292 Or 735, 642 P2d 1158 (1982). For similar reasons, we conclude that *Byrd v. Stringer, supra,* does not apply to land use decisions that amend comprehensive plans and that are by statute made subject to review for goal compliance. We reject petitioners' first assignment.

Their next assignment is that LUBA erred by concluding that "the reasons which could be used to justify an exception under ORS 197.732(1)(c)[6] were limited to proposed

---

[6]ORS 197.732(1) provides:

"(1)  A local government may adopt an exception to a goal when:

"(a)  The land subject to the exception is physically developed to the extent that it is no longer available for uses allowed by the applicable goal;

"(b)  The land subject to the exception is irrevocably committed as described by commission rule to uses not allowed by the applicable goal because existing adjacent uses and other relevant factors make uses allowed by the applicable goal impracticable; or

"(c)  The following standards are met:

"(A)  Reasons justify why the state policy embodied in the applicable goals should not apply;

"(B)  Areas which do not require a new exception cannot reasonably accommodate the use;

"(C)  The long term environmental, economic, social and energy consequences resulting from the use at the proposed site with measures designed to

new development, as opposed to pre-existing development * * *." Petitioners also argue that LUBA had no authority to apply such a limitation "when the agency given policy making authority under ORS 197.732(3) [*i.e.,* the Land Conservation and Development Commission (LCDC)] has not chosen to establish such a limitation."

■ We find no merit to either prong of that argument. We conclude that, without a showing that existing non-resource uses on resource land create a need for prospective nonresource uses, the existing uses *in themselves* cannot be the basis for an exception under ORS 197.732(1)(c),[7] whether or not they could support an exception under ORS 197.732 (1)(a) or (1)(b). As LUBA explained:

"[A]n exception is available under ORS 197.732(1)(c) where a proposed use not permitted by a goal is needed, not where the preexistence of such a use prevents goal conformance or makes it impracticable. Were this not the case, the legislature would not have made consideration of alternative locations for the use a requirement. *See* ORS 197.732(1)(c)(B) and (C). Nor would it have been necessary for the legislature to specifically provide, as it did, for exceptions based on physical development or commitment of the land in question to uses not allowed by the goal. *See* ORS 197.732(1)(a) and (b)."

■ We also disagree with petitioners' argument that LUBA's "limitation" of the permissible exceptions under ORS 197.732(1)(c) exceeded its authority, because LCDC has not adopted a corresponding rule. Petitioners rely on ORS 197.732(3), which provides:

"[LCDC] shall adopt rules establishing under what circumstances particular reasons may or may not be used to justify an exception under [ORS 197.732(1)(c)(A)]."

---

reduce adverse impacts are not significantly more adverse than would typically result from the same proposal being located in areas requiring a goal exception other than the proposed site; and

"(D) The proposed uses are compatible with other adjacent uses or will be so rendered through measures designed to reduce adverse impacts."

[7] Petitioners' argument suggests that LUBA concluded that existing development cannot be considered *at all* in connection with an ORS 197.732(1)(c) exception. We do not agree that LUBA's interpretation goes that far. (If it had, we might disagree with it to the extent that it goes beyond our formulation in the text. *See* OAR 660-04-022(2).) We agree with LUBA's holding that there can be no exception under ORS 197.732(1)(c) here.

Petitioners conclude:

> "ORS 197.732(3) arguably gives LCDC the power to, by rule, limit an exception under (1)(c) to new development. It does not give LUBA that power. LCDC's rule, OAR 660-04-000 to 660-04-035 dealing with exceptions does not create any such limitation. Since LCDC has not adopted a rule under ORS 197.732(3) limiting a (1)(c) exception to new development, it was error for LUBA to do so on its own."

Assuming that petitioners are correct in maintaining that LCDC has not adopted a rule that directly *supports* LUBA's construction of the statute, *but see* OAR 660-04-022(2), we do not understand petitioners to argue that any rule of LCDC's is directly *contravened* by LUBA's order. We also do not understand the argument to be that an elucidating rule is a necessary precursor to agency action under the principles expressed in *McPherson v. Employment Division,* 285 Or 541, 591 P2d 1381 (1979), and *Oliver v. Employment Division,* 40 Or App 487, 595 P2d 1252 (1979). The practical import of petitioners' argument is that, given LCDC's and LUBA's relative "policy-making" authority, and given LCDC's rule-making responsibility under ORS 197.732(3), LCDC's failure to issue a rule that controls the application of ORS 197.732(1)(c) to specific facts bars LUBA from construing or applying the statute to those facts in the exercise of its review responsibilities. We reject that argument.

ORS 197.835(8)(a)(D) requires that LUBA reverse or remand land use decisions if the deciding body has "[i]mproperly construed the applicable law"; more specifically, ORS 197.732 requires:

> "(6) Upon review of a decision approving or denying an exception:
>
> "* * * * *
>
> "(b) [LUBA] upon petition, or [LCDC], shall determine whether the local government's findings and reasons demonstrate that the standards of subsection (1) of this section have or have not been met; and
>
> "(c) [LUBA or LCDC] shall adopt a clear statement of reasons which sets forth the basis for the determination that the standards of subsection (1) of this section have or have not been met."

We find it inconceivable that the legislature would give LUBA

the duty, independently of LCDC, to decide whether local land use decisions comply with applicable law and to determine and explain whether a local government's exceptions comply with ORS 197.732(1) without intending that LUBA have independent authority to construe ORS 197.732(1), at least to the extent that LCDC's rules and interpretations are not contrary to LUBA's interpretations. Petitioners' second assignment is without merit.

Petitioners make one further assignment challenging LUBA's determination on the merits. They advance two arguments in support of that assignment. The first asks that we engage in semantic quibbling. The second asks that we reverse LUBA's conclusion that the county's findings and statement of reasons for an exception under ORS 197.732(1)(b) were not sufficient to satisfy ORS 197.732(4) and OAR 660-04-028. We decline to do either.[8]

Affirmed.

---

[8] The county states in its brief:

"[T]he findings ran 26 pages, legal size, consisting of over 7,500 words * * *. One cannot say the basis of the County's decision cannot be determined from these findings. Remember this decision was made originally by a lay body and after 7500 words, the basis of the County's conclusions are clear."

Although we are not unsympathetic to the frustrations and the good faith efforts of local governments, we think the message that needs to be given by us is that neither LUBA nor we have the authority to waive the requirements of the land use laws in the guise of construing and applying them. The message the county wishes to have transmitted can only be sent by the legislature.