Argued and submitted October 16, affirmed December 11, 1985, reconsideration denied February 14, petition for review denied April 29, 1986 (301 Or 76)

## LEAGUE OF WOMEN VOTERS OF COOS COUNTY CO et al,
*Respondents,*

*v.*

## COOS COUNTY,
*Petitioner.*

(85-023; CA A37115)

712 P2d 111

John K. Knight, Coos County Counsel, Coquille, argued the cause and filed the brief for petitioner.

Robert L. Liberty, Portland, argued the cause and filed the brief for respondents.

Before Buttler, Presiding Judge, Joseph, Chief Judge, and Rossman, Judge.

JOSEPH, C. J.

Buttler, P. J., dissenting.

## JOSEPH, C. J.

Coos County's governing body decided that respondents League of Women Voters (League) and Watkins lacked standing to appeal and had also failed to file a timely appeal to the governing body from the planning commission's allowance of a conditional use permit for the construction of a residence and a barn in a forest district. LUBA reversed that decision, and the county appeals. We affirm.

Watkins is a member of the League. She appeared at the planning commission's November 8, 1984, hearing on the permit application and testified:

"One of the concerns that we've had is the protection of forest lands and the reason that * * * the county zoned that land * * * is that it is commercial forest and should be saved for the production of timber. One of the things that concerns me is that, Menasha has said that they plan to cut timber in the area and they will be spraying. And the spray, most of the sprays that are used * * * have an adverse effect on gardening and on fruit trees and also on the water supply. And that's one of the problems that we have when we allow residences in the commercial forest land."

The planning commission's minutes reflect that "Marguerite Watkins, LWV" opposed the application.

The planning commission approved the application at the November 8 meeting. The county did not send respondents a notice of that decision. The written order approving the application was entered in the county records on November 9, and respondents subsequently discovered the order while reviewing the county planning department's files. They filed their appeal to the governing body on December 19, 1984. The relevant provision of the county zoning ordinance allows a 30-day period for appeals from the planning commission to the governing body. Respondents appealed more than 30 days after the planning commission's decision was entered but within 30 days of their discovery of the decision.

The governing body dismissed the appeal on several grounds: it was untimely; respondents did not have standing to appeal, because, *inter alia,* "[t]he hearings body did not recognize [their] interest as they did not assert a position on the merits of the application" and "were merely disinterested witnesses [whose] abstract interest in land use planning * * *

is [not] the type of interest which qualifies them as being 'aggrieved' * * * to confer standing in a quasi-judicial decision"; and respondents also lacked standing, because the League is a corporation and it did not appear before the planning commission through an attorney, as the county understood ORS 9.320 and a provision of the planning commission procedural ordinance to require. LUBA disagreed with the county on each point.

■     The first of the county's four assignments is that LUBA erred by rejecting the county's conclusion that respondents' failure to appear through an attorney at the planning commission hearing affected their standing to appeal to the governing body. Neither ORS 9.320 nor the county provision purports by its terms to have any effect on the standing or the appeal rights of corporations which appear other than through an attorney.[1] We decline to read that effect into the provisions. Neither the substance nor the purpose of ORS 9.320 supports the county's understanding that a corporation loses its right to appeal a decision, with the assistance of an attorney,[2] because it was allowed to appear without counsel before the inferior tribunal which rendered the decision. The county ordinance provision is presumably modeled after ORS 9.320; in any event, assuming that the county had *any* authority to adopt the provision, *but see Re Application of Jesse Crum,* 103 Or 296, 204 P 948 (1922), we find no basis for interpreting the ordinance differently from the statute. The League's failure to have an attorney at the planning commission hearing does not defeat its standing to appeal to the governing body, and the failure has no arguable bearing on Watkins' individual standing.

The county makes two assignments of error directed against LUBA's conclusion that respondents were aggrieved

---

[1] ORS 9.320 provides, as relevant:

"Any action, suit, or proceeding may be prosecuted or defended by a party in person, or by an attorney, except that the state or a corporation appears by attorney in all cases, unless otherwise specifically provided by law."

*Section 12.300 of Coos County Ordinance 81-003 requires:*

"All corporations and government agencies must appear through their attorneys."

[2] The League was represented by counsel before the governing body.

by the planning commission's decision and that they therefore had standing to appeal to the governing body under section 5.8.100(8) of the county zoning ordinance and, implicitly, under ORS 215.422.[3] The county argues that its denial of standing was a proper exercise of the "gate-keeping" function described in *Jefferson Landfill Comm. v. Marion Co.*, 297 Or 280, 686 P2d 310 (1984), and that LUBA's conclusion is inconsistent with findings by the county that were supported by substantial evidence and were binding on LUBA.

Under *Jefferson Landfill*, a person satisfies the "aggrievement" criterion of the LUBA statute for standing to appeal a land use decision to LUBA if (1) the person's "interest in the decision was recognized by the local land use decision-making body," (2) the person "asserted a position on the merits" and (3) the local body "reached a decision contrary to the position asserted." 297 Or at 284. However, the court went on to explain that the local decision-makers function as gate-keepers and could

"by ordinance or otherwise * * * determine who will be admitted or excluded as an interested person or limited to the status of a disinterested witness * * *. If the decision-makers have not made such a determination, by ordinance or otherwise, it will be assumed that when a person appears before the local body and asserts a position on the merits, the person has a recognized interest in the outcome." 297 Or at 284.

In *Lamb v. Lane County*, 70 Or App 364, 689 P2d 1049 (1984), we held that the *Jefferson Landfill* analysis is applicable to the determination of whether a person is "aggrieved" within the meaning of ORS 215.422 for purposes of having

---

[3] ORS 215.422(1) provides, in material part:

"A party aggrieved by the action of a hearings officer or other decision making authority may appeal the action to the planning commission or county governing body, or both, however the governing body prescribes."

The county ordinance gives standing to appeal to the governing body to a person who

"i.   appeared before the Hearings Body orally or in writing; and,

"ii.  was a person entitled as of right to notice and hearing prior to the decision to be reviewed or was a person whose interests are adversely affected or who was aggrieved by the decision."

The terms "hearings officer," "hearings body" and "planning commission" are synonymous for the purposes of this opinion.

standing to appeal a county hearings officer's decision to its governing body. We also said:

> "Some of the language in *Benton County v. Friends of Benton County* [294 Or 79, 90-91, 653 P2d 1249 (1982)], suggests that as long as the local body applies the correct test, it may reach a conclusion [on standing] different from that which a court might reach." 70 Or App at 369. (Footnote omitted.)

However, we concluded, in the light of *Jefferson Landfill* and *Friends of Benton County,* that the county had not applied the correct test and that it was ascertainable as a matter of law that, contrary to Lane County's conclusion, Lamb was aggrieved.

It may be, as the county postulates and respondents ask us to refute, that the gate-keeping function devised in *Jefferson Landfill* can be construed or used by local decision makers to insulate their decisions from the otherwise quite non-restrictive tests of aggrievement that *Jefferson Landfill* and other opinions of the Supreme Court articulate. *But see Overton v. Benton County,* 61 Or App 667, 658 P2d 574 (1983). However, it is unnecessary for us to confront that dilemma here because, like *Lamb,* this case presents a situation where the county used an incorrect test as its lever to shut the gate.

The key to the county's argument that respondents were not aggrieved is its "finding" that "[r]espondents held interests in this case, if any, no different or greater than those of the general public at large." The county expands on that in its argument here:

> "Respondents failed to allege any special injury or interest which distinguished them from the public-at-large which would show that they were aggrieved. * * * Neither stated that they owned property in the proximity of the subject parcel. Neither alleged any economic or non-economic harm resulting from approval of the conditional use permit application which affected them any differently than anyone else. Neither alleged that the hearings body decision was in their favor, but less than desired or that they were a public official or agency 'assigned responsibility for various aspects of public policy but have no "interests" of their own to be "adversely affected" by an adverse decision.' *Benton County v. Friends of Benton County,* 294 Or 79, 88, 653 P2d 1249 (1983). In other words, their sole showing of interest in the decision was that they

have for a long time wanted the state land use laws to be obeyed."

■    The county's reasoning does not support its conclusion that respondents were not aggrieved. The facts that respondents have no geographic proximity to the area affected by the decision and that they can suffer no economic or non-economic harm are germane to whether they were adversely affected, not to whether they were aggrieved by the planning commission's decision. *See Benton County v. Friends of Benton County*, 294 Or 79, 85-89, 653 P2d 1249 (1982). Indeed, given that the planning commission's decision pertained to the allowance of a non-forest use in a forest district in a county with an unacknowledged comprehensive plan, the conceded fact that respondents showed that they had a long-standing interest in the correct application of the land use laws was sufficient to establish that they *were* aggrieved by the planning commission's rejection of the position they asserted. *See Jefferson Landfill Comm. v. Marion Co, supra,* 297 Or at 285. We reject the county's argument that its denial of standing to respondents is supportable as an exercise of its gate-keeping function.

■    The county is also mistaken in its argument that its findings were binding on LUBA and are inconsistent with LUBA's holding that respondents were aggrieved. The county states:

"In determining whether Respondents had standing, Respondent County made the following findings (among others):

"1.   Respondents held interests in this case, if any, no different or greater than those of the general public at large;

"2.   The Hearings Body did not recognize the interest of Respondents;

"3.   Respondents Watkins and the League, if present at all, were merely disinterested witnesses at the hearing on the Young application; and

"4.   Respondents Watkins and the League, if present at all, did not assert a position on the merits of the application.

"These findings are supported by substantial evidence in the record as will be discussed below and should have been

accepted by LUBA even though it might have reached a different conclusion from the same set of facts."

The first of those findings is simply a legal conclusion, and it is erroneous for the reasons we have stated. The other findings—to the extent that they are findings rather than conclusions—are without *any* arguable support in the record. LUBA did not err by concluding that respondents were aggrieved by the planning commission's decision.

■   The county's final assignment is that LUBA erred by ruling that respondents' appeal to the governing body was timely. LUBA relied on *Bryant v. Clackamas County,* 56 Or App 442, 643 P2d 649 (1982), where we interpreted the statute now codified as ORS 215.416(8):

"Written notice of the approval or denial [of the permit] shall be given to all parties to the proceedings."

We concluded that that statute precludes counties from providing, as Clackamas County had done, that the time for appeal runs from the date of a hearings officer's *oral* decision, and we held that the appeal period was to be calculated from the time when the parties in *Bryant* had notice of the written findings and order of the hearings officer. *See also Ludwick v. Yamhill County,* 72 Or App 224, 696 P2d 536, *rev den* 299 Or 443 (1985).

The county argues that this case is distinguishable from *Bryant.* Here, there was no provision that an oral decision could initiate the 30-day time to appeal, and a written decision was entered in the records more than 30 days before respondents appealed. The county also points out that respondents did not complete the address cards that the county made available to enable participants in the planning commission hearing to advise the county of where to send notice. It further contends that LUBA's and respondents' reading of *Bryant* could make it a practical impossibility for any planning commission decision ever to achieve finality, because any casual participant could defer the appeal time indefinitely by failing to inform the county of a desire for notice or where to send it.

Although there is considerable logic to the county's argument, we conclude that the particular facts in this case require that we reach the same conclusion as we did under the

facts in *Bryant.* The governing body's minutes reveal that the county's planning director intended to send respondents copies of the letters that apprised the applicant of the planning commission's decision and, according to the director, "it was unintentional that [respondents] did not receive copies of the letters." Given the circumstances, LUBA correctly held that the county's failure to notify respondents of the decision tolled the time for their appeal.

Affirmed.

**BUTTLER, P. J.,** dissenting.

Because I disagree with the majority's conclusion that respondents' appeal to the governing body was timely, I dissent.

In *Bryant v. Clackamas County,* 56 Or App 442, 643 P2d 649 (1982), we held that the appeal period starts to run from the time when notice of the written findings and order of the local body is given, rather than the date of the local body's oral decision. Although that is not the question posed in this case, the majority relies on it.

The question here, as I see it, is whether the local body may make reasonable rules designed to advise the body of the names and addresses of the persons who have appeared and who desire notice of its final order. Local bodies should adopt reasonable rules so that interested persons will know what their rights are and when local orders or ordinances become final and appealable, because without them we, as a reviewing court, are left to improvise what we believe to be reasonable resolutions of the problems of finality and notice. *See Columbia River Television v. Multnomah Co.,* 299 Or 325, 702 P2d 1065 (1985) (reversing a majority decision of this court denying the county's right to determine finality of its orders by a local rule); *Thompson v. City of St. Helens,* 76 Or App 440, 709 P2d 748 (1985) (the lack of a local rule required that a majority of the court "interpret" a statute to cover the situation presented).

Here, Coos County has adopted a rule that requires interested parties who have appeared before the Planning Commission to fill out cards giving their names and addresses so that the person responsible for giving written notice of the local body's order will know to whom to send the notice and

where to send it. At oral argument, respondents agreed that the rule was a reasonable one. Yet, the majority declines to permit the local body to adhere to it, because, apparently, the local body knew that respondents had appeared and because the local body did not intentionally fail or refuse to give them notice.

The point is, it seems to me, that the failure to fill out the required card was the cause of respondents' failure to receive notice. If the county may not enforce its rule in this case, the rule becomes essentially meaningless, because the person responsible for sending notices would be required to review the minutes of the proceedings to determine who had appeared and to look up the addresses of those persons before the local body could be certain that the final order was no longer subject to review. That result is untenable, and there is no compelling reason in this case to deny the county the certainty that its rule is designed to foster.

Although I agree with the majority's disposition of the other assignments of error, I would not reach them, because respondents' appeal came too late.