Argued and submitted April 18, affirmed on petition and cross-petition July 11, respondents-cross-petitioners' petition for reconsideration filed July 25; petitioner-cross-respondent City of Medford's response to respondents-cross-petitioners' petition for reconsideration filed July 31; and respondent-cross-respondent Cedar Landing, LLC's response to petition for reconsideration filed August 1 denied by opinion September 26, 2007 See 215 Or App 284, 168 P3d 1158 (2007)

## NORTH EAST MEDFORD NEIGHBORHOOD COALITION
and Tom Michaels,
*Respondents
Cross-Petitioners,*

*and*

George EBERT,
James Sharp, and Lois Nobles,
*Respondents,*

*v.*

## CITY OF MEDFORD,
*Petitioner
Cross-Respondent,*

*and*

## CEDAR LANDING, LLC,
*Respondent
Cross-Respondent.*

Land Use Board of Appeals
2006132; A134897

162 P3d 1059

Lori J. Cooper argued the cause and filed the briefs for petitioner-cross-respondent.

Corinne C. Sherton argued the cause for respondents-cross-petitioners. With her on the brief was Johnson & Sherton PC.

Timothy E. Brophy argued the cause and filed the briefs for respondent-cross-respondent. With him on the briefs were Dominic M. Campanella and Brophy, Mills, Schmor, Gerking, Brophy & Paradis, LLP.

No appearance for respondents George Ebert, James Sharp, and Lois Nobles.

Before Landau, Presiding Judge, and Schuman, Judge, and Simpson, Judge pro tempore.

LANDAU, P. J.

## LANDAU, P. J.

In this land use case, the City of Medford (city) approved a consolidated application for a preliminary planned unit development (PUD) and an application for removal of an overlay zone. LUBA remanded the case on the ground that the city had failed to provide notice to the Director of the Department of Land Conservation and Development (DLCD), but otherwise affirmed. The city seeks review, arguing that LUBA erred in concluding that notice to DLCD was required. Petitioners, a neighborhood association and a neighbor, cross-petition on the ground that LUBA should have remanded on other grounds as well. We affirm on the petition and the cross-petition.

The relevant facts are not in dispute. Cedar Landing owns a 122-acre parcel of property located in the City of Medford. The property is zoned single family residential, which limits development to four dwelling units per acre. A 7.3-acre portion also is subject to an exclusive agriculture (EA) overlay zone, which restricts development to agricultural buildings.

In January 2005, Cedar Landing applied for approval of a preliminary PUD plan for development of the property. At the time of the application, neither Cedar Landing nor the city was aware of the fact that 7.3 acres of the proposed development were subject to the EA overlay zone; the overlay zone apparently did not appear on the version of the zoning maps that the city was using at the time of the application. The overlay zone would have effectively prohibited the proposed development. In the course of the application process, however, Cedar Landing and the city became aware of the zoning map error, and, in January 2006, Cedar Landing—acting pursuant to the city's advice—submitted a zone change application to remove the EA overlay from the 7.3-acre portion of the proposed development. The city consolidated the zone change application and the original preliminary PUD application. The city did not, however, provide notice of the proposed zoning map amendment to DLCD. The city planning commission held hearings on the consolidated applications and ultimately approved them. The city council affirmed.

Petitioners appealed the city's decision to LUBA. They argued that the city erred in two respects. First, they argued that the city erred in failing to provide DLCD proper notice of the proposed zoning map amendment. Second, they argued that the city erred in approving the consolidated application because, at the time of the initial application, 7.3 acres of the property was subject to an EA overlay zone, which precluded the development as proposed. Cedar Landing and the city argued in response to the first contention that notice to DLCD was not required in this case because notice is required by statute only for changes to "land use regulations," and administrative rules promulgated by the Land Conservation and Development Commission (LCDC) expressly exempt small tract zoning amendments from the definition of such land use regulations. Cedar Landing and the city argued in response to petitioners' second contention that the consolidation of the preliminary PUD and zoning map amendment applications is expressly permitted under the city's land development code.

LUBA agreed with petitioners on their first contention, holding that LCDC lacks authority to create exceptions to the types of amendments that the statute subjects to a notice requirement. LUBA rejected petitioners' second contention, concluding that the city's local development code plainly allows the sort of consolidation of applications that occurred in this case. LUBA remanded the case to the city so that it may give notice to DLCD of the proposed amendment to the zoning map to remove the EA overlay.

The city seeks review, arguing that LUBA erred in holding that notice to DLCD is required. Petitioners cross-petition, arguing that LUBA erred in concluding that state law does not preclude the sort of consolidation of applications that occurred in this case.

We begin with the city's petition. ORS 197.610(1) provides:

"A proposal to amend a local government acknowledged comprehensive plan or land use regulation or to adopt a new land use regulation shall be forwarded to the Director of the Department of Land Conservation and Development at least 45 days before the first evidentiary hearing on

adoption. The proposal forwarded shall contain the text and any supplemental information that the local government believes is necessary to inform the director as to the effect of the proposal. The notice shall include the date set for the first evidentiary hearing. The director shall notify persons who have requested notice that the proposal is pending."

Thus, if there is a proposal to amend, among other things, a "land use regulation," DLCD must receive notice of it. ORS 197.015(12) expressly defines "land use regulation" to mean "any local government zoning ordinance, land division ordinance adopted under ORS 92.044 or 92.046 or similar general ordinance establishing standards for implementing a comprehensive plan."

■      In this case, it is not contested that the proposal to remove the EA overlay zone is a proposal to amend a "local government zoning ordinance." It would seem necessarily to follow that the proposal is precisely the sort of which ORS 197.610(1) requires notice to DLCD.

Arguing to the contrary, the city relies on OAR 660-018-0010(11), which provides that, in addition to what ORS 197.015(12) says about the meaning of the term "land use regulation," the term "does not include small tract zoning map amendments, conditional use permits, individual subdivisions, partitioning or planned unit development approvals or denials, annexations, variances, building permits, and similar administrative-type decisions." As the application to remove the EA overlay zone is clearly a "small tract zoning amendment," the city argues, the application does not implicate the notice requirement that applies only to amendments to "land use regulations."

■      The short answer to the city's contention is that an agency, by administrative rule, may not create exemptions from a statutory definition. *See, e.g., Altamirano v. Woodburn Nursery, Inc.*, 133 Or App 16, 23, 889 P2d 1305 (1995) (administrative agency may not, by rule, limit the terms of a statutory definition). The slightly longer answer is that the very same conclusion may be derived by examination of the source of the exemptions that appear in OAR 660-018-0010(11).

ORS 197.015(12) was originally enacted in 1981. As originally enacted, it defined the term "land use regulation" as

"any local government zoning ordinance, land division ordinance adopted under ORS 92.044 or 92.046 or similar general ordinance establishing standards for implementing a comprehensive plan. 'Land use regulation' does not include small tract zoning map amendments, conditional use permits, individual subdivisions, partitioning or planned unit development approvals or denials, annexations, variances, building permits and similar administrative-type decisions."

Or Laws 1981, ch 748, § 1(11). Shortly after enactment of that statutory definition, LCDC adopted OAR 660-018-0010(11), which mirrored the statutory definition—including the exception for, among other things, small tract zoning map amendments—verbatim.

In 1989, for reasons that are not pertinent to any issue in this case, the legislature amended the definition of "land use regulation" in ORS 197.015(12) expressly to delete all of the exemptions stated in the second sentence of the subsection. Or Laws 1989, ch 761, § 1(11). LCDC, however, never enacted amendments to OAR 660-018-0010(11) to conform to the statutory amendments. The administrative rule continues to include exceptions—including the exception for small tract zoning map amendments—that the legislature expressly deleted from the statute; the exceptions stated in the rule, in other words, are based on statutory language that no longer exists.

■   The city acknowledges that fact, but insists that we should assume that the legislature has acquiesced, by its inaction, in the continuing validity of the exceptions contained in the administrative rules. According to the city, if the legislature had intended that LCDC alter its rules to conform to the statutory amendments, it would have said so in those amendments, and the legislature's silence on the matter should be taken as tacit approval for the continued validity of the rules. The city, however, cites neither statute nor case law for the proposition that a legislature's silence may

have the effect of affirmatively creating administrative agency authority, and we are aware of none.

■ The city argues that, even if it failed to provide DLCD the notice that the law requires, reversal is not required because no one was prejudiced by the lack of such notice. We are not persuaded. In some cases, failure to provide notice is considered a "procedural" error that does not require remand or reversal in the absence of a showing of prejudice. *See* ORS 197.835(9)(a)(B) (providing for reversal or remand if LUBA finds that a local government "[f]ailed to follow the procedures applicable to the matter before it in a manner that prejudiced the substantial rights of the petitioner"). Where, however, the legislature requires notice to effectuate the purpose of ensuring that land use regulations comply with the statewide planning goals, a failure to provide notice of an amendment affecting a land use regulation is a substantive matter that does not depend on whether the failure to provide notice prejudiced anyone's participatory rights. Directly on point in that regard is *Oregon City Leasing, Inc. v. Columbia County*, 121 Or App 173, 177, 854 P2d 495 (1993). We conclude that LUBA did not err in determining that the city failed to provide the notice required by law for amendments to "land use regulations" and that the error requires a remand for the city to provide the notice.

■ On cross-petition, petitioners challenge LUBA's conclusion that the city did not err in permitting the consolidation of the initial preliminary PUD application and the application to remove the EA overlay zone. According to petitioners, although it is true that the consolidation is permitted by the local development code, that code provision and the city's reliance on it in this case conflict with state law. Specifically, petitioners argue that, by its terms, ORS 227.175(2) allows consolidation of applications filed "at one time," not consolidation of applications filed a year apart.

The Medford Land Development Code (MLDC) provides that "[t]he applicant for a development permit may choose to request approval of all, any one, or a combination of required plan authorizations. A request for approval of a specific plan authorization may follow, at any time, the application for other required plan authorizations." MLDC § 10.101.

The local development code includes a similar provision that applies to plan authorizations:

> "The development permit application will identify the required plan authorization necessary for issuance of a development permit. The applicant for a development permit, at the time of application or anytime thereafter, may request approval of any one or combination of required plan authorizations as identified on the development permit application."

There is no debate about whether the city's consolidation of Cedar Landing's application for a preliminary PUD plan and the application for removal of the EA overlay zone were authorized by the foregoing provisions of the local development code. Petitioner's argument is that the provisions—particularly their authorization of consolidating applications "at any time"—run afoul of ORS 227.175(2). That statute requires the governing body of a city to "establish a consolidated procedure by which an applicant may apply at one time for all permits or zone changes needed for a development project." According to petitioners, that means that a city may consolidate only those permits that were filed on the same date or, in the alternative, before an application has become "complete."

Nothing in ORS 227.175(2), however, precludes the sort of consolidation that is described in the local development ordinances at issue in this case. The statute does not say anything about the matter. Indeed, it does not specify what cities *cannot* do. It specifies what cities must do, namely, establish a procedure for consolidated permit and zone change applications.

Petitioners argue that reading the statute to permit the sort of consolidation that occurred in this case threatens the requirement of certainty in applicable decisional criteria that is expressed in ORS 227.178(3), which provides that approval or denial of applications "shall be based upon the standards and criteria that were applicable at the time the application was first submitted." LUBA addressed that argument, and rejected it, noting that there is no reason to assume that, because multiple applications may be consolidated in a single proceeding, the standards pertaining to

each individual application do not continue to apply as of the date that each of those individual applications was completed:

"We read ORS 227.175(2) as allowing an applicant to request review of multiple applications in a 'consolidated procedure' and continue to enjoy the protections of the fixed goal post statute as to each application, even if the application for a necessary zone change is not filed on the same date as the development applications. This reading harmonizes the clear intent of ORS 227.175(2) to allow applicants to consolidate all necessary applications in a single proceeding with the fixed goal post protection for each application afforded under ORS 228.178(3)(a)."

We agree with LUBA and conclude that it did not err in determining that the city's consolidation of applications in this case was not precluded by law.

Affirmed on petition and cross-petition.