Argued and submitted October 24, 2008, affirmed January 14, petition for review denied June 17, 2009 (346 Or 362)

Carlton WOODARD
and Martin Kilmer,
*Respondents,*

*v.*

CITY OF COTTAGE GROVE,
*Respondent,*

*and*

Russell LEACH
and Lori Leach,
*Petitioners.*

Land Use Board of Appeals
2008022, 2008054, 2008055;
A139800

201 P3d 210

Bill Kloos argued the cause for petitioners. With him on the brief was Law Office of Bill Kloos, PC.

Jannett Wilson and Goal One Coalition waived appearance for respondents Woodward and Kilmer.

No appearance for respondent City of Cottage Grove.

Before Edmonds, Presiding Judge, and Ortega, Judge, and Sercombe, Judge.

SERCOMBE, J.

**SERCOMBE, J.**

Petitioners seek review of an opinion and order of the Land Use Board of Appeals (LUBA). LUBA remanded three City of Cottage Grove ordinances that rezoned petitioners' property and an adjacent parcel and separately applied a zoning overlay district to both properties. On review, petitioners contend that LUBA erred in failing to dismiss the appeals of two of the ordinances because a separate notice of intent to appeal was not filed for each challenged ordinance within 21 days after its adoption as required by ORS 197.830(9). Petitioners also contend that LUBA erred in remanding the ordinances for further proceedings to assess the consistency of the rezoning ordinances with the Transportation Planning Rule, OAR chapter 660, division 12. We review LUBA's opinion and order to determine if it is "unlawful in substance." ORS 197.850(9)(a). We affirm for the reasons stated below.

Petitioners operate the Cottage Grove Speedway, an automobile racetrack, on a 17-acre parcel. The Western Oregon Exposition Center is located on an adjacent tract and furnishes parking for the speedway. Both parcels were annexed to the city. Petitioners sought zoning changes to facilitate the racetrack, exposition, and parking uses. They obtained three zone change ordinances from the city: a change of designation for both parcels from a county agricultural district to the city's Parks and Recreation (PR) zoning district (Ordinance No. 2927); the application of a Mixed Use Master Plan (MUMP) overlay district to their property (Ordinance No. 2928); and the placement of a MUMP overlay district on the exposition property (Ordinance No. 2929). Those ordinances were appealed to LUBA by opponents of the racetrack use and were remanded to the city for reconsideration to correct a prejudicial procedural error. *Woodard v. City of Cottage Grove*, 54 Or LUBA 176 (2007).[1] After reconsideration, the ordinances were readopted.

---

[1] Before the current round of appeals, there were earlier contests concerning whether Lane County correctly verified the nonconforming use status of the racetrack (*Leach v. Lane County*, 45 Or LUBA 580 (2003)) and whether the city's adoption of amendments to the zoning ordinance to establish the PR zoning district and the MUMP zoning combining district was lawful (*Okray v. City of Cottage Grove*, 47 Or LUBA 297 (2004)).

The opponents appealed again to LUBA, filing a single notice of intent to appeal that identified Ordinance Nos. 2927, 2928, and 2929 as the subjects of the appeal. Petitioners moved to dismiss Ordinance Nos. 2928 and 2929 from the appeal, arguing that each of the ordinances was a separate land use decision, requiring a separate notice and filing fee under ORS 197.830(9), and that only Ordinance No. 2927 was appealed effectively. LUBA denied the motion on the basis of its rule that allowed supplemental filings to cure a notice of intent to appeal that appealed more than one land use decision. OAR 661-010-0015(1)(c). The opponents then filed supplemental notices.

After briefing and argument, LUBA again remanded the ordinances for reconsideration because the city's findings were insufficient to justify the land use decisions under several approval criteria, including the Transportation Planning Rule, OAR chapter 660, division 12. That rule requires mitigation when a local government amendment to a "land use regulation" affects an existing or planned transportation facility in various ways. On review, petitioners assign two errors: (1) LUBA's failure to dismiss two of the three appeals for lack of separate and timely notices of intent to appeal; and (2) LUBA's determination that Ordinance No. 2927, the PR zoning designation, was an amendment to a "land use regulation" and was subject to the mitigation requirements of the Transportation Planning Rule. Petitioners contend that a small tract rezoning ordinance is not an amendment to a "land use regulation" as that term is used in the rule.

We begin with petitioners' claim that the notice of intent to appeal was insufficient to call up all three ordinances. ORS 197.825(1) confers jurisdiction on LUBA to review land use decisions of a local government. ORS 197.830 provides, in part:

"(1)   Review of land use decisions or limited land use decisions under ORS 197.830 to 197.845 shall be commenced by filing a notice of intent to appeal with the Land Use Board of Appeals.

"(2)   Except as provided in ORS 197.620(1) and (2), a person may petition the board for review of a land use decision or limited land use decision if the person:

"(a)   Filed a notice of intent to appeal the decision as provided in subsection (1) of this section; and

"(b)   Appeared before the local government, special district or state agency orally or in writing.

"* * * * *

"(9)   A notice of intent to appeal a land use decision * * * shall be filed not later than 21 days after the date the decision sought to be reviewed becomes final. * * * Copies of the notice of intent to appeal shall be served upon the local government, special district or state agency and the applicant of record, if any, in the local government, special district or state agency proceeding. The notice shall be served and filed in the form and manner prescribed by rule of the board and shall be accompanied by a filing fee of $175 and a deposit for costs to be established by the board.* * *"

Petitioners argued before LUBA that ORS 197.830 establishes a jurisdictional requirement of a timely notice of intent to appeal for each land use decision. Petitioners rely on the requirement in ORS 197.830(2)(a) that allows a person to obtain review of a land use decision if that person "[f]iled a notice of intent to appeal *the* decision as provided in [ORS 197.830(1)]." (Emphasis added.) Petitioners interpret the statute to require that the notice reference only "the decision" or a single decision by the governmental entity. They categorize that requirement as jurisdictional, based on our characterization of ORS 197.830 as " 'jurisdictional' in the most basic of senses" in *Wicks-Snodgrass v. City of Reedsport*, 148 Or App 217, 224, 939 P2d 625, *rev den*, 326 Or 59 (1997) (21-day deadline to file a notice of intent to appeal under ORS 197.830(9) cannot be extended by application of a judicially created tolling doctrine).

In its order on the motion to dismiss, LUBA noted that it had consistently held that, where a notice of intent to appeal identifies more than one decision, dismissal of the appeals is not required so long as the petitioners submit additional filing fees and cost deposits. *See Union Gospel Ministries v. City of Portland*, 21 Or LUBA 557, 558 (1991); *Osborne v. Lane County,* 4 Or LUBA 368 (1981). Indeed, based on that practice, LUBA adopted a rule in 1998 codifying that policy. OAR 661-010-0015(1)(c) provides:

"If the Board determines that a Notice identifies more than one final decision as the subject of appeal, the Board shall notify the petitioner. The Board shall dismiss the Notice if the petitioner fails to submit within the date specified by the Board either a written election to appeal only one decision, or a separate Notice and separate filing fee and deposit, as required by section (4) of this rule, for each additional decision."

LUBA determined that its rule was consistent with the requirements of ORS 197.830:

"In our view, nothing in ORS 197.830(1), (2) or (9) explicitly requires that a notice of intent to appeal identify only one decision as the subject of the appeal. * * * The best that can be said with any confidence is that the relevant statutes do not explicitly require that a single notice challenge only one decision or explicitly prohibit filing a single notice that challenges multiple decisions.

"The statutes are also silent regarding the consequences of filing a single notice that challenges more than one decision. While timely filing of the notice of intent to appeal is certainly jurisdictional, we are aware of no authority stating that a petitioner who files an otherwise proper [notice of intent to appeal] that identifies more than one decision as the subject of the appeal thereby fails to invoke LUBA's jurisdiction over the additional decisions. * * *

"* * * * *

"ORS 197.820(4) provides that LUBA shall adopt rules governing the conduct of its review proceedings. More to the point, ORS 197.830(9) provides that the notice of intent to appeal 'shall be served and filed in the form and manner prescribed by' LUBA's rules. LUBA has adopted such rules, in OAR 661-010-0015(1). Because no statute cited to our attention requires that a single notice challenge only one decision, prohibits filing a single notice that challenges more than one decision, or assigns jurisdictional significance to the filing of an otherwise proper notice that challenges more than one decision, the question is left to LUBA's discretion, as embodied in our rules."

We agree with LUBA's analysis. ORS 197.830 does not explicitly allow, or prevent the use of, a single notice to challenge more than one land use decision. The number of

required notices required to appeal more than one decision is a matter of the "form and manner" by which notices are filed. ORS 197.830(9) allows policy on the "form and manner" of notices to be "prescribed by rule of the board." OAR 661-010-0015(1) sets out the relevant policy. The rule does not exceed the statutory authority of LUBA. *See* ORS 183.400(4)(b) (limiting judicial authority to invalidate agency rule to particular circumstances, including if a court finds the rule "[e]xceeds the statutory authority of the agency").

■     We recently decided an analogous issue in *O'Rourke v. Union County*, 217 Or App 1, 175 P3d 485 (2007). In *O'Rourke*, we held that deficiencies in the content and service of a notice of intent to appeal that did not violate any express statutory requirement were not jurisdictional under ORS 197.830. We noted:

> "The deficiencies in content and service of the notices of intent to appeal on which petitioner relies did not violate any express statutory requirement and, perforce, no statute makes them jurisdictional defects. ORS 197.830(9) and LUBA's rules make the timely filing of a notice of intent to appeal jurisdictional, but the legislature delegated to LUBA formulation of the specific requirements for the content and service of a notice of intent to appeal. In fulfilling that delegation, the board has given itself latitude to correct 'technical' defects such as a failure to timely submit a filing fee and deposit, OAR 661-010-0015(1)(b), and the erroneous filing of only one notice of intent to appeal purporting to challenge more than one land use decision, OAR 661-010-0015(1)(c)."

*Id.* at 9 (footnote omitted). Consistently with the *dictum* in *O'Rourke*, we now hold that LUBA was within its statutory authority in adopting OAR 661-010-0015(1)(c) and in allowing correction of a technically defective notice of intent to appeal that appeals more than one land use decision.

Petitioners' second assignment of error takes issue with LUBA's remand of the rezoning ordinances for further justification under the Transportation Planning Rule. OAR ch 660, div 12. The relevant part of the Transportation Planning Rule regulates "an amendment to * * * a land use regulation [that] would significantly affect an existing or

planned transportation facility." OAR 660-012-0060(1). Petitioners claim that the ordinances that change the zoning districts for both parcels do not amend any "land use regulation." Petitioners rely on a since-superseded definition of "land use regulation" in a different Land Conservation and Development Commission (LCDC) rule that excluded "small-tract zoning map amendments" from the definition of "land use regulation." Petitioners alternatively contend that Goal 12 and the Transportation Planning Rule do not apply to an ordinance that rezones property making it consistent with the land use designation shown on an acknowledged comprehensive plan diagram. We are not persuaded by either contention.

The Transportation Planning Rule was adopted by LCDC in 1991 to implement Goal 12, the statewide planning goal on transportation. The rule requires local governments to adopt transportation system plans (TSP) to establish land use controls and to plan future facilities and services to meet identified local transportation needs. OAR 660-012-0015(3)(a). A TSP becomes part of a local government's comprehensive plan. OAR 660-012-0015(4). A locality is required to amend its land use regulations to implement the TSP. OAR 660-012-0045(1). The implementing land use regulations must include, among other things, a "process for coordinated review of future land use decisions affecting transportation facilities, corridors or sites" and "[r]egulations assuring that amendments to land use designations, densities, and design standards are consistent with the functions, capacities and performance standards of facilities identified in the TSP." OAR 660-012-0045(2)(d) and (g). Once the comprehensive plan, including the TSP, and implementing regulations have been acknowledged by LCDC as consistent with the rule, the implementing regulations apply directly to future land use decisions. OAR 660-012-0055(4).

Part of the Transportation Planning Rule, OAR 660-012-0060, details the consequences of making changes to land use regulations that significantly affect an existing or planned transportation facility. The consequences could include requiring measures to mitigate those effects or to amend the comprehensive plan and TSP to make those plans

consistent with the proposed change. OAR 660-012-0060(2). OAR 660-012-0060(1) provides, in part:

> "Where an amendment to a functional plan, an acknowledged comprehensive plan, or a land use regulation would significantly affect an existing or planned transportation facility, the local government shall put in place measures as provided in section (2) of this rule to assure that allowed land uses are consistent with the identified function, capacity, and performance standards (e.g., level of service, volume to capacity ratio, etc.) of the facility. A plan or land use regulation amendment significantly affects a transportation facility if it would:

> "* * * * *

> "(c)   As measured at the end of the planning period identified in the adopted transportation system plan:

> "(A)   Allow land uses or levels of development that would result in types or levels of travel or access that are inconsistent with the functional classification of an existing or planned transportation facility * * *."

LUBA held that the ordinances under review were "amendments to * * * a land use regulation" and were regulated by OAR 660-012-0060(1). Petitioners claim that the rezoning ordinances do not amend a "land use regulation" and are not subject to the justification required by OAR 660-012-0060. "Land use regulation" is not defined in the Transportation Planning Rule. Petitioners assert that the definition of "land use regulation" used in another set of LCDC rules supplies the agency's intended meaning of "land use regulation" in OAR 660-012-0060. Those rules pertain to review by the Department of Land Conservation and Development (DLCD) of changes to local land use policies.

In 1981, the Legislative Assembly adopted several amendments to ORS chapter 197. One of those changes, codified at ORS 197.610 to 197.625, required local governments to provide notification to the DLCD director of proposals to amend an acknowledged comprehensive plan or "land use regulation" or to adopt a new land use regulation. The

department could then review the proposed changes for consistency with state law and participate in the adoption proceedings. Or Laws 1981, ch 748, §§ 4, 5, 5a, and 5b. The 1981 law defined "land use regulation" as

> "any local government zoning ordinance, land division ordinance adopted under ORS 92.044 or 92.046 or similar general ordinance establishing standards for implementing a comprehensive plan. 'Land use regulation' does not include small tract zoning map amendments, conditional use permits, individual subdivisions, partitioning or planned unit development approvals or denials, annexations, variances, building permits and similar administrative-type decisions."

Or Laws 1981, ch 748, § 1(11). That definition was codified at ORS 197.015(12) (1981).

Shortly after adoption of the 1981 law, LCDC promulgated implementing regulations in OAR chapter 660, division 18. OAR 660-018-0010(11) defined "land use regulation" exactly the same as it was defined in ORS 197.015(12), including the exemption for, among other things, small tract zoning map amendments. In 1989, the legislature amended the definition of "land use regulation" in ORS 197.015(11) to eliminate the second sentence that sets out the exemptions from the definition. Thus, ORS 197.015(11) (1989) provided:

> " 'Land use regulation' means any local government zoning ordinance, land division ordinance adopted under ORS 92.044 or 92.046 or similar general ordinance establishing standards for implementing a comprehensive plan."[2]

LCDC did not adopt a corresponding amendment to the definition of "land use regulation" in OAR 660-018-0010(11), and the administrative rule continued to mirror the earlier statutory definition until it was reconciled in 2008.[3]

---

[2] That definition of "land use regulation" survives in current law. ORS 197.015(11).

[3] We recently reviewed that history in *North East Medford Neighborhood v. City of Medford*, 214 Or App 46, 162 P3d 1059, *recons den*, 215 Or App 284, 168 P3d 1158 (2007). There, we determined that small-tract zoning map amendments are subject to the DLCD director notification and review process, notwithstanding the exclusion in the administrative rule definition of "land use regulation." We concluded that the statutory definition of "land use regulation" and statutory requirements for notification and review were controlling.

As noted earlier, the Transportation Planning Rule was adopted in 1991 and does not define "land use regulation" for purposes of applying OAR 660-012-0060. Petitioners assert that LCDC intended the meaning of "land use regulation" in the 1991 Transportation Planning Rule to be the same as the contemporaneous definition of "land use regulation" in OAR 660-018-0010(11) (1991) that was used in the DLCD notification rules, so that the term does not include small-tract zoning map amendments. Petitioners contend that the rezoning ordinances under review are small-tract zoning map amendments and conclude that LUBA erred in applying the Transportation Planning Rule to those ordinances.

We reject petitioners' logic. There is no reason to believe that the definition of "land use regulation" that applied, by its terms, to only one division of LCDC rules, the rules on DLCD notification of regulatory changes, has any relevance to the meaning of "land use regulation" as used in another division of those rules, the Transportation Planning Rule, that was adopted at a different time. Petitioners point to no logical relationship between the two sets of policies that would suggest a coextensive scope. Lacking any temporal or subject matter relationship, the different sets of rules are not *in pari materia*. Neither division provides relevant context to interpretation of the meaning of the text of the other division.

■ Instead, the *statutory* definition of "land use regulation" in 1991, ORS 197.015(11) (1991), is the relevant context to the meaning of "land use regulation" as used in the Transportation Planning Rule adopted that year. ORS 197.015(11 (1991) provided a common definition of "land use regulation" for the statutory land use policies in ORS chapters 195, 196, and 197.[4] Other terms used in the Transportation Planning Rule are defined in ORS chapter

---

[4] ORS 197.015 (1991) provided, in part:

"As used in ORS chapters 195, 196 and 197, unless the context requires otherwise:

"* * * * *

"(11) 'Land use regulation' means any local government zoning ordinance, land division ordinance adopted under ORS 92.044 or 92.046 or similar general ordinance establishing standards for implementing a comprehensive plan."

197 and not in the Transportation Planning Rule itself, *e.g.*, "comprehensive plan" (ORS 197.015(5)), "goals" (ORS 197.015(8)), "land use decision" (ORS 197.015(10)), "limited land use decision" (ORS 197.015(12)), and "local government" (ORS 197.015(13)). It is apparent that the Transportation Planning Rule and ORS chapters 195, 196, and 197 share a common vocabulary. As noted earlier, the statutory definition of "land use regulation," both currently and at the time of the adoption of the Transportation Planning Rule, does not contain an exclusion for "small-tract zoning map amendments."

So understood, an "amendment to * * * a land use regulation" under OAR 660-012-0060(1) includes an amendment to "any local government zoning ordinance." The zoning ordinance amendments under review in this case fit that bill. The city adopted a zoning map as part of Title 18 of the Municipal Code of the City of Cottage Grove. That zoning map was part of the city's "zoning ordinance." Section 4 of Ordinance No. 2927 provided:

> "Section 4. <u>Amendment</u>. The city-wide 'zoning map' which is a part of Title 18 is hereby amended as follows with respect to the property described in Exhibit 'A' change of zoning district classification from AGT 5 Agriculture, Grazing, Timber 5-Acres Minimum District to PR Parks & Recreation District."

(Underscore in original.) Similar text was used in Ordinance Nos. 2928 and 2929. All three ordinances effected an amendment to a land use regulation, an ordinance establishing a city zoning map.

The remaining text of the Transportation Planning Rule leaves little doubt that the rule can regulate ordinances that change the use of particular land. Under OAR 660-012-0055(4)(b), before the time that the comprehensive plan and land use regulations are acknowledged as complying with the rule, a city or county "shall apply relevant sections of this rule to land use decisions and limited land use decisions until land use regulations complying with this amended rule have been adopted." OAR 660-012-0060 regulates changes to those plans and regulations that affect the functional classification of an existing or planned transportation facility as set out in

the adopted transportation system plan. Those changes include actions that "[a]llow land uses or levels of development that would result in types or levels of travel or access that are inconsistent with the functional classification of an existing or planned transportation facility." OAR 660-012-0060(1)(c)(A). OAR 660-012-0060(3) sets out exceptions to the requirements for certain plan or land use regulation amendments for "allowed land uses" when "[d]evelopment resulting from the amendment" will produce certain effects or the amendment "does not involve property located in an interchange area." That context corroborates the conclusion that OAR 660-012-0060 regulates amendments to land use regulations that change the land uses for specific properties, including amendments to zoning maps.

Petitioners finally contend that OAR 660-012-0060 does not affect a zoning map amendment that rezones property consistently with the property's designation on a comprehensive plan diagram. Petitioners argue that, once a comprehensive plan and its diagram have been acknowledged by LCDC as consistent with the statewide planning goals, land use decisions are measured against the plan and not the goals. ORS 197.175(2)(d);[5] *Byrd v. Stringer*, 295 Or 311, 318-19, 666 P2d 1332 (1983). Petitioners reason that, because the zone changes were consistent with the plan diagram, there is no need to evaluate the zone changes for consistency with Goal 12 or its implementing regulation, the Transportation Planning Rule.

In transportation planning, however, the more relevant part of the comprehensive plan is the transportation system plan. OAR 660-012-0060 regulates amendments to the comprehensive plan or land use regulations that are inconsistent with functional classification or performance standards of a transportation facility that are part of the

---

[5] ORS 197.175 provides, in part:

"(2) Pursuant to ORS chapters 195, 196 and 197, each city and county in this state shall:

"* * * * *

"(d) If its comprehensive plan and land use regulations have been acknowledged by the commission, make land use decisions and limited land use decisions in compliance with the acknowledged plan and land use regulations[.]"

transportation system plan. That plan inconsistency creates a need to rejustify the changes, to evaluate them under the policies of Goal 12 and the Transportation Planning Rule or land use regulations mirroring those requirements. ORS 197.175(1) ("planning and zoning responsibilities" to be "in accordance with * * * the goals"); OAR 660-012-0045 (implementation of transportation system plan); OAR 660-012-0055(4) (application of regulations implementing a transportation system plan). The application of OAR 660-012-0060 to the zone changes in this case does not offend ORS 197.175(2) or the reasoning of *Byrd*.

Affirmed.